# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Patricia King

v.

Victoria Elizabeth King,
Executor

September 10, 1997

Case No. CL96-348-02

By Judge William H. Ledbetter, Jr.

The question presented is whether a judgment creditor of a decedent's estate can enforce the judgment by garnishment of the executor's fiduciary bank account. For the reasons explained below, the court is of the opinion that garnishment is not an appropriate remedy under the circumstances of this case.

## Background

Patricia King sued her former husband's estate for unpaid spousal support that accrued prior to his death. Following a trial on April 8, 1997, this court entered judgment for her in the principal sum of $33,197.88 plus interest and costs.

Thereafter, a writ of *fieri facias* issued and the judgment was docketed in the clerk's office of this court.

On August 11, 1997, the judgment creditor instituted this garnishment proceeding. The garnishee is Central Fidelity Bank, the depository of the executor's fiduciary funds.

The Bank responded to the garnishment summons indicating that it has $24,741.88 on deposit in the executor's fiduciary account. The executor responded with a motion to quash the summons on the ground that it is an inappropriate proceeding.

The court conducted a hearing on September 2, 1997, and took the matter under advisement.

### Decision

Garnishment is the process by which a judgment creditor enforces the lien of his execution against any debt or property due his judgment debtor in the hands of a third party. *Lynch v. Johnson*, 196 Va. 516 (1954). Garnishments are governed by Virginia Code § 8.01-511 et seq.

Ordinarily, a judgment lien creditor such as Mrs. King has priority over unsecured creditors. Upon issuance and delivery of the writ of fieri facias and the service of the garnishment summons, her debt would be secured by a charge against specific property owned by, or some specific debt owed to, the debtor. See Bryson, *Virginia Civil Procedure* (3d ed. 1997), pp. 583-584.

However, as noted above, her judgment is against a decedent's estate. The order in which debts of a decedent are paid is governed by Virginia Code § 64.1-157. According to that statute, the personal representative first pays costs and expenses of administration; second, the family allowance, homestead allowance, and exemptions allowed by statute; third, funeral expenses up to $2,000.00; fourth, debts and taxes with preference under federal law; fifth, medical expenses of the decedent's last illness not to exceed specified sums; sixth, debts and taxes due the Commonwealth of Virginia; seventh, debts due as a fiduciary, and certain other obligations not pertinent here; eighth, all other claims.

At the September 2nd hearing, the executor represented to the court, without objection, that debts of the decedent total more than $52,000.00, and the only asset of the estate is the fund on deposit in the fiduciary bank account. Most if not all those debts are within the eighth category: "all other claims." Therefore, she argues, the fund must be distributed to the creditors in the eighth class *pro rata* without preference.

Section 64.1-157 specifically provides that "no preference shall be given in the payment of any claim over any other claim of the same class."

Does § 64.1-157 prevail over general creditors' rights which would entitle Mrs. King to a preference or priority over unsecured creditors (or other lien creditors, for that matter, whose liens did not attach prior in time to hers)?

Section 64.1-159 provides the answer. The statute states that the provisions of § 64.1-157 shall not affect "any lien acquired *in the lifetime* of the decedent" [emphasis added]. Similarly, in *Wood v. Wood's Administrator*, 5 Va. L. Reg. 395 (1899), it was held that a judgment lien acquired on the decedent's property *during his lifetime* had priority over other claims (even

funeral expenses) attaching after his death. See also *Maness v. Tidewater Sand Co.*, 220 Va. 1042 at 1047 (1980).

There would be no reason for the General Assembly and the Supreme Court to speak of preferences for liens "acquired in the lifetime of the decedent" if such preferences were similarly available to creditors who acquired liens after the death of the debtor. By clear implication, persons acquiring judgment liens after the death of the debtor — i.e., against his estate — do not gain preference or priority over other debts of the decedent in contravention of § 64.1-157.

Therefore, this court holds that a creditor who acquires a lien during the lifetime of the debtor has priority over unsecured claims of the debtor's estate, but a creditor cannot defeat the statutory method of paying claims of a decedent by reducing his claim to judgment after the debtor's death and seeking to gain a superior position by enforcement of the judgment lien.

Because garnishment is merely a means of enforcing a judgment creditor's lien, such a garnishment proceeding is, perforce, inappropriate when the judgment is obtained after the debtor's death.

It follows that Mrs. King's judgment against the estate of her former husband does not create a lien against property in the estate that elevates her preference or priority over other creditors of the estate, nor does her judgment affect the application of § 64.1-157.

Therefore, the executor's motion will be granted and the garnishment dismissed.

### Further Proceedings

The court cannot adjudicate the rights and priorities of the various creditors of the estate in this proceeding. If the identity and validity of the demands against the estate are not in dispute, a debts-and-demands hearing before the commissioner of accounts would be the appropriate method by which distribution of the funds could be determined. Also, a creditor's suit is an available (but more time-consuming) remedy. See 8A M.J., *Executors and Administrators*, §§ 113-117.